(No. 14370.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE BYRNES *et al.* Plaintiffs in Error.

*Opinion filed February 22, 1922—Rehearing denied April 7, 1922.*

1. CRIMINAL LAW—*when charge of robbery while armed with a revolver is sustained.* An indictment charging several persons, as principals, with robbery while armed with a revolver is sustained by proof that one of the defendants was so armed, as possession by one of the accomplices is the possession of all.

2. SAME—*whether alibi is proved is a question for the jury.* It is for the jury to decide whether or not the defendants have established their defense of alibi or whether they were at the scene of the crime at the time it was committed.

3. SAME—*court may allow People to call a witness after case is closed.* Whether the People may be allowed to introduce another witness after the defendants have introduced their evidence is a matter resting largely in the sound discretion of the trial court, and in the absence of an abuse of such discretion prejudicial to the defendants there is no ground for complaint.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding.

JOHN M. LONERGAN, and SAMUEL E. FOOS, (W. G. ANDERSON, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, CLYDE C. FISHER, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiffs in error, George Byrnes, James Quinlan and Bernard Sullivan, were indicted and convicted in the criminal court of Cook county on a jury trial of the charge of robbery while armed with a revolver and were sentenced to the State penitentiary at Joliet, and this writ of error has been sued out to review the record.

Plaintiffs in error were charged with robbery while armed with a dangerous weapon, a revolver, of Eleanor Apel while she was acting as ticket agent for the Metropolitan West Side Elevated Railway Company at Racine avenue, in Chicago. She testified that three men entered the station where she was in charge at about 10:45 on Sunday evening, March 13, 1921; that she was alone in the booth, and the first thing she knew Quinlan "bounced a gun down upon the window sill" in front of her and Byrnes went to the side of the booth; that Quinlan said to her, "Turn around and get out of there," and when she obeyed, Byrnes grabbed her by the back of the neck and pushed her to the end of the room; that Quinlan came around and went to the front of the booth to get the money; that Byrnes said to her when Quinlan was doing this, "Turn around and look out of that window or I will shoot you;" that on Quinlan suggesting to Byrnes that he bring her back to the booth in order to show where the money was, she was brought back by Byrnes, he in the meantime choking her and saying, "Stop that fooling now or I will blow your kidneys out;" that Byrnes and Quinlan took all the money that was in the booth; that just then a policeman came in and the men escaped from the ticket booth, one going out of the window and the other out of the back door. She testified that she had among other pennies 170 that were greenish, a silver dollar that was dirty and which she had thought might be counterfeit, some dimes, nickels and quarters, and an old five-dollar bill, and these were all missing after the men escaped. This witness was shown a silver dollar in the court room and stated it was the same coin that was taken from her that night, stating her reason for so believing, and that the money taken from her at that time was owned by the Metropolitan West Side Elevated Railway Company, which she had taken in as ticket agent. She did not attempt to identify the third man who was with Quinlan and Byrnes, stating that she only saw his body;

that he helped raise the window when one of the men jumped out in escaping.

Police officer Parker testified that, accompanied by another officer, about 11:30 P. M. on that Sunday he went into a saloon at the corner of Sangamon and VanBuren streets, in Chicago, and while there the three plaintiffs in error came in and ordered a drink and offered to treat the policemen, who accepted cigars, and while Quinlan and Byrnes were standing at the bar Quinlan produced a lot of small change, including pennies, to pay for the treat; that then the officers searched both Byrnes and Quinlan and took from Byrnes some silver and a bill, amounting to $3.85, but no pennies; that from Quinlan they took $4 and some small change, including 42 pennies. Parker testified that while the other officer was searching Quinlan, plaintiff in error Sullivan went into a toilet room in the rear of the saloon and witness heard something jingling there, and pushing the swinging door slightly open he saw Sullivan take something out of his pocket and deposit it on a settee, and that Sullivan, in answer to a question what he was doing there, turned around and fumbling with the fly of his pants stated that he had been using the toilet; that witness took Sullivan into the main room of the saloon and then went back into the rear room and found 118 pennies on the settee. This money, with the other money taken from the three plaintiffs in error, was placed in an envelope by Parker and left at the police station, and the contents of this envelope were identified by Parker as the same money that he took from plaintiffs in error; that it was United States currency, including the silver dollar and the copper pennies.

The testimony of the saloon-keeper was to the effect that the plaintiffs in error had been in his saloon about ten o'clock, or earlier in the evening, and that about five minutes to eleven Quinlan came back, having on a raincoat and a brown hat, and seemed to be excited; that he took a

glass of wine and went away; that some twenty minutes later Sullivan came in and bought a package of cigarettes and paid for it with twenty pennies, and that thereafter the three men came back after the officers got there, about 11:30.

The record showed without contradiction, most of the evidence being produced in answer to questions asked by counsel for plaintiffs in error, that Byrnes was formerly convicted, before Judge Petit, of an assault with intent to rob, was paroled in December, 1915, and discharged in 1916; that Quinlan was formerly convicted of robbery on November 23, 1912, and sentenced to Joliet; that he served about one year and was then paroled; that Sullivan was formerly convicted of burglary in 1910, paroled July 24, 1913, and discharged April 17, 1914, while serving his sentence at Pontiac. No question was raised as to the truth of these facts and no point is made that any error was committed in admitting the testimony as to the former convictions.

Counsel for plaintiffs in error in their original brief argue that there is no proof in the record as to the Metropolitan West Side Elevated Railway Company being an Illinois corporation at the time of the trial or of the alleged robbery. Thereafter it was stipulated by counsel for the plaintiffs in error and the State that it was proved in the case, though not shown in the original bill of exceptions, that said company was an Illinois corporation at the time of the trial and at the time the offense was committed, and that the witness Eleanor Apel was an agent of the corporation, and that whatever money she had in her possession was taken from her by force by someone on March 13, 1921; that the money taken belonged to the said company. The defense made by all the plaintiffs in error was what is usually called an alibi, but the evidence in that regard in their behalf was not entirely consistent, some of the testimony of some of their witnesses being contradictory on material points.

It is urged that the only proof in the record as to any of the plaintiffs in error having a revolver was as to Quinlan, and it is urged that there is no proof that Byrnes or the third man,—whether Sullivan or some other party,—had or used a revolver at the time the money was taken from Miss Apel, and it is argued that conviction cannot stand on an indictment charging them all, as principals, with robbery while armed with a revolver. The possession of stolen property is personal and exclusive if it is exclusive as to all persons not *particeps criminis.* "As to accomplices, the possession of one is the possession of all." (Underhill on Crim. Evidence,—2d ed.—sec. 300, p. 527.) This court has more than once held that accessories before the fact may be charged and convicted as principals. The pleader may, however, if he chooses, state the circumstances of the offense as in an indictment against an accessory before the fact, yet the indictment must contain an allegation charging the defendant as principal. In this State an accessory before the fact may be indicted and punished as principal, and it is the ordinary practice to indict as principal an accessory before the fact. (*People* v. *Snyder,* 279 Ill. 435, and authorities there cited; *Lionetti* v. *People,* 183 id. 253.) Under these authorities all defendants were properly convicted under this indictment as principals.

It is for the jury to decide whether or not the defendant was at the scene of the crime at the time it was committed, and a judgment of conviction will not be reversed on the facts unless the evidence clearly indicates a reasonable doubt of guilt. (*People* v. *Stephens,* 297 Ill. 91; *People* v. *Maciejewski,* 294 id. 390.) Not only were Quinlan and Byrnes identified, positively, by the prosecuting witness, Miss Apel, as being the persons who held her up, but the circumstances connected with their arrest and the 'money found in their possession tend strongly to show that they were the parties engaged in the robbery of the elevated station, and the testimony as to the connection of Sulli-

van with the crime, in our judgment, satisfactorily showed that he had in his possession some of the fruits of this robbery. The testimony of the witnesses for plaintiffs in error as to the alibi was, as already stated, not entirely in harmony, and we think on this record it was peculiarly a question for the jury to find whether or not they were the parties who committed the robbery.

Counsel for plaintiffs in error contend that error was committed in permitting the assistant State's attorney who prosecuted this case to make certain statements to the jury during the trial as to his intention to call another witness. This witness, as we understand the record, was the saloon-keeper, who was thereafter called by the State, and while it might have been the better practice to have called him before the State's case was closed and not to have introduced his testimony after the testimony for the defense had been entered upon, we think such a question as this is in the sound discretion of the trial court. (*People* v. *Cunningham,* 300 Ill. 376.) We do not think any reversible error was committed in allowing this evidence to be introduced when it was, or in the statements of the State's attorney. We cannot see how plaintiffs in error were injured in any way by such statements.

Some other questions are raised by plaintiffs in error as to improper admission of evidence, but we have given them consideration and do not think any serious error was thereby committed in the rulings of the trial court. The evidence, in our judgment, justified the jury in finding the plaintiffs in error guilty of the crime charged.

We find no reversible error in the record, and the judgment of the criminal court of Cook county will therefore be affirmed.                    *Judgment affirmed.*