THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RICHARD SIMON, Defendant-Appellee.

First District (4th Division)    No. 79-2280

Opinion filed December 23, 1980.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Robert H. Aronson, of Chicago, for appellee.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

At the conclusion of a hearing on defendant's motion to quash the indictment charging him with delivery of less than 30 grams of cocaine (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(b)), the trial court dismissed the indictment. The sole issue on appeal is whether the trial court's dismissal of the indictment is manifestly erroneous. We hold that it is and we reverse and remand.

The indictment sets forth the offense as follows:

> "Louis Angelopoulos [1] and Richard Simon committed the offense of delivery of [a] controlled substance in that they unlawfully and knowingly delivered to Al Rodriguez otherwise than as authorized in the Illinois Controlled Substances Act of * * * Illinois * * *, less than thirty grams of a substance containing a controlled substance to wit: cocaine."

At the hearing on the motion to quash the indictment, defendant raised two arguments; (1) the legislature amended Schedule II of the Controlled Substance Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1206(b)(4)) and struck the word "cocaine" from the section, therefore, "cocaine" is no longer a controlled substance and thus the indictment did not allege an offense; and (2) the word "cocaine" is a generic term for a broad

---

[1] Angelopoulos has not participated in this appeal.

spectrum of properties and only some properties are controlled and therefore the indictment is not sufficiently specific so as to be legally proper in form. The trial court based its dismissal of the indictment on defendant's first argument. Thereupon, the State instituted this appeal.

OPINION

The State contends that the trial court's dismissal of the indictment is manifestly erroneous. We agree.

■■ When the sufficiency of an indictment is attacked in a pretrial motion (Ill. Rev. Stat. 1977, ch. 38, par. 114—1), the standard of review is to determine whether the indictment complies with the provisions of section 111—3 of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 111—3), which lists the requirements for charging an offense. (*People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 378 N.E.2d 1200.) This section requires that the charge: (1) be in writing; (2) state the name of the offense; (3) cite the statutory provisions alleged to be violated; and (4) set forth the elements of the offense. *People v. Tuczynski.*

Whether the requirements of the statute have been met must be judged in light of the purpose of the charging instrument (*People v. Bissaillon* (1977), 55 Ill. App. 3d 893, 371 N.E.2d 362) and with reference to the plain ordinary meaning of the words of the charging instrument as read and interpreted by a reasonable person (*People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244). The function of an indictment, like any other charging instrument, is first to advise the accused of the nature of the accusation so he is able to fully prepare his defense, and second to serve as a bar to second prosecution for the same offense. *People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 378 N.E.2d 1200.

If the substance of the charge meets these standards, the indictment should not be dismissed. (*People v. Bissaillon* (1977), 55 Ill. App. 3d 893, 371 N.E.2d 362; *People v. DePratto* (1976), 36 Ill. App. 3d 338, 343 N.E.2d 628.) Thus, the sufficiency of an indictment is determined by the substance of the charge asserted and not by the linguistic technicalities of the language utilized in the indictment. (*People v. Powell* (1978), 72 Ill. 2d 50, 377 N.E.2d 803, *cert. denied* (1979), 440 U.S. 907, 59 L. Ed. 2d 455, 99 S. Ct. 1214.) In addition, an indictment is to be read as a whole, and where the statute is cited in an indictment, as in the instant case, the statute and the charge are to be read together. *People v. Jones* (1975), 30 Ill. App. 3d 1065, 333 N.E.2d 245.

a.

With these principles in mind, we now examine the indictment in the instant case and the trial court's asserted basis for dismissing the indictment.

The indictment charges defendant with delivery of less than 30 grams of "cocaine," a controlled substance, in violation of section 401(b) (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(b)). Section 401 makes delivery of a controlled substance unlawful. Subsections (a) and (b) set forth the felony classifications and penalties which are dependent upon the amount of the controlled substance a person is charged with delivering or manufacturing. Subsection (a), for example, makes delivery of a substance containing more than 30 grams of "cocaine" a Class I felony (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(a)(2)). Subsection (b), the section defendant is charged with violating, classifies as a Class II felony any other amount of a controlled substance enumerated in Schedules I or II (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(b)) which is a narcotic drug.

The trial court based its dismissal of the indictment on the use of the word "cocaine" in the indictment. The trial court concluded that delivery of "cocaine" was no longer an offense because in 1977, the legislature amended Schedule II to delete the specific word "cocaine." (Ill. Rev. Stat. 1977, ch. 56½, par. 1206(b)(4).) Prior to 1977, Schedule II listed the following:

"The controlled substances listed in this section are included in Schedule II.

＊ ＊ ＊

(b) Any of the following substances, except those narcotic drugs listed in other schedules, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis;

＊ ＊ ＊

(4) Coca leaves, cocaine and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions of coca leaves, which extractions do not contain cocaine or ecgonine." (Ill. Rev. Stat. 1975, ch. 56½, par. 1206(b)(4).)

In 1977, the legislature amended this section as follows:

"The controlled substances listed in this section are included in Schedule II.

(b) Unless specifically excepted or unless listed in another schedule, any of the following substances whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis:

＊ ＊ ＊

(4) Coca leaves and any salt, compound, derivative, or prepara-

tion of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions of coca leaves, which extractions do not contain *cocaine* or ecgonine; * * *." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 56½, par. 1206(b)(4).

Although the word "cocaine" was deleted from the first line of subsection (b)(4) in 1977, the word "cocaine" remains in this section and various other sections of the Controlled Substances Act. (*E.g.,* Ill. Rev. Stat. 1977, ch. 56½, par. 1401(a)(2) (delivery or manufacture of more than 30 grams of cocaine is a Class I felony); Ill. Rev. Stat. 1977, ch. 56½, par. 1402(a)(2) (possession of a substance containing more than 30 grams of cocaine is a Class 1 felony).) We agree with the State that if the legislature had intended a substantive change, so that "cocaine" was no longer a controlled substance, then all references to "cocaine" would have been deleted. [2] "It is a cardinal rule of statutory construction that significance and effect should, if possible, without destroying the sense or effect of the law, be accorded every paragraph, sentence, phrase and word. [Citation.] A statute should be so construed, if possible, that no word, clause or sentence is rendered meaningless or superfluous. [Citations.]" (*People ex rel. Barrett v. Barrett* (1964), 31 Ill. 2d 360, 364-65, 201 N.E.2d 849, 851.) "In construing a statute where the same, or substantially the same, words or phrases appear in different parts of the same statute they will be given a generally accepted and consistent meaning, where the legislative intent is not clearly expressed to the contrary. [Citations.]" *Moran v. Katsinas* (1959), 16 Ill. 2d 169, 174, 157 N.E.2d 38, 40.

The 1977 amendment to section 206 which deleted the word "cocaine" from the first line of subsection (b)(4) is consistent with the section 102(aa)(4), defining narcotic drugs, and utilizes virtually the same language (compare Ill. Rev. Stat. 1977, ch. 56½, par. 1102(aa)(4), with Ill. Rev. Stat. 1977, ch. 56½, par. 1206(b)(4)). A narcotic drug both prior to and after 1977 and a Schedule II controlled substance after 1977 are ones derived from coca leaves but do not include substances derived from decocainized coca leaves or extractions of coca leaves which do not contain cocaine or ecgonine. Compare Ill. Rev. Stat. 1975, ch. 56½, par. 1102(aa)(4), and Ill. Rev. Stat. 1977, ch. 56½, par. 1102(aa)(4), with Ill. Rev. Stat. 1977, ch. 56½, par. 1206(b)(4).

Both the Fourth and Fifth Districts of the Illinois Appellate Court have construed section 102(aa)(4) defining narcotic drugs to include the word "cocaine." (*People v. Anderson* (1979), 74 Ill. App. 3d 363, 365, 392

---

[2] To construe the act otherwise would mean that only possession or delivery of more than 30 grams of cocaine is unlawful while possession or delivery of lesser amounts of cocaine is lawful. Such a result would be absurd.

N.E.2d 938, 941 ("It is true that Section 1102(aa)(4) [citation] defines *cocaine* as a 'narcotic' drug" (emphasis added)); *People v. Vernor* (1978), 66 Ill. App. 3d 152, 154, 383 N.E.2d 699, 700 ("[Section 1102(aa)(4)] defines 'narcotic drugs' to mean opium, the opiates and coca leaves (from which *cocaine* is processed) * * * the Act defines narcotic drugs to include *cocaine* * * *" (emphasis added)). More recently, the Third District, in dicta, noted that Schedule II included the drug "cocaine" (*People v. Hackett* (1979), 77 Ill. App. 3d 877, 880, 396 N.E.2d 820, 823). This precedent belies the notion that cocaine is no longer a controlled substance or that the 1977 amendment rendered the statute confusing.

■■ In our view, it would be contrary to reason and experience to assume first, that defendant was not informed of the precise charge against him and, second, that delivery of a substance derived from coca leaves which contained cocaine could not be inferred from the language "delivery of a controlled substance to wit: cocaine." We agree with the State that the plain, ordinary meaning of section 206(b)(4) (Ill. Rev. Stat. 1977, ch. 56½, par. 1206(b)(4)) is that only extractions of coca leaves or equivalents which do contain cocaine or ecgonine are controlled substances. Thus, the use of the word "cocaine" in the indictment, a word of common usage and understanding[3] which also is utilized in the Controlled Substances Act, did not render the indictment fatally defective. We conclude, therefore, that the trial court's ruling was erroneous.

### b.

Defendant contends, however, that the indictment does not charge him with an offense, because it does not charge him with delivery of a particular type of cocaine. Defendant maintains that there are eight types of cocaine and only one type is a controlled substance. Since the indictment uses the generic name "cocaine," he argues he cannot prepare a defense because he does not know which type of cocaine he allegedly delivered. The State correctly responds that there are eight *isomers* of cocaine. (*United States v. Bockius* (5th Cir. 1977), 564 F.2d 1193.) These are D-cocaine, L-cocaine, D-pseudo-cocaine, L-pseudo-cocaine, D-allocaine, L-allocaine, D-alpha cocaine, and L-alpha cocaine. 564 F.2d 1193, 1195 n.2.

■■ We agree with the State that the only reasonable and apparent reference to cocaine in the instant indictment must be a reference to either D-cocaine or L-cocaine, because the other isomers have different names.

---

[3] In other indictment cases, the courts have noted that certain words used in the indictment were words of common usage and understanding. *E.g., People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244 (intent to deprive could be inferred from language of robbery charge); *People v. Grieco* (1970), 44 Ill. 2d 407, 255 N.E.2d 897 (battery); *People v. Ballard* (1978), 65 Ill. App. 3d 831, 382 N.E.2d 800 (theft).

Here, as in *United States v. Umentum* (7th Cir. 1976), 547 F.2d 987, *cert. denied* (1977), 430 U.S. 983, 52 L. Ed. 2d 376, 97 S. Ct. 1677, the indictment charges that the substance "cocaine" is a controlled substance. In our view, the indictment is sufficiently specific so that defendant is informed of the offense and is able to prepare a competent defense. The form of the indictment also will permit the defendant to plead any judgment rendered as a bar to future prosecution. (*People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1249.) Also, the indictment here will not prevent defendant from defending against the charge by attempting to establish that the substance he delivered was not controlled by the statute. See, *e.g., United States v. Orzechowski* (7th Cir. 1976), 547 F.2d 978, *cert. denied* (1977), 431 U.S. 906, 52 L. Ed. 2d 391, 97 S. Ct. 1701; *United States v. Umentum* (7th Cir. 1976), 547 F.2d 987, *cert. denied* (1977), 430 U.S. 983, 52 L. Ed. 2d 376, 97 S. Ct. 1677; *cf. People v. Rege* (1976), 64 Ill. 2d 473, 356 N.E.2d 537.[4]

Accordingly, in our view, the trial court correctly rejected this aspect of defendant's argument.

For the reasons noted, the judgment of the circuit court of Cook County is reversed and the case is remanded for further proceedings.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.

---

[4] We further note that other jurisdictions have considered defendant's argument and rejected it. *United States v. Bockius* (5th Cir. 1977), 564 F.2d 1193; *United States v. Lange* (E.D. Wisc. 1976), 422 F. Supp. 400; *United States v. Siak* (W.D. Penn. 1977), 432 F. Supp. 1035.