THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CESAR MORENO, Defendant-Appellant.

First District (2nd Division)   No. 82—808

Opinion filed June 28, 1983.

Jerome Rotenberg, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Marie Quinlivan, and Jeanette Sublett, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Following a bench trial, defendant was found guilty of reckless homicide and sentenced to 30 months adult probation with eight months of periodic imprisonment and prohibited from operating a motor vehicle. The issues raised on appeal include whether: (1) defendant was proven guilty of reckless homicide beyond a reasonable doubt; (2) the indictment sufficiently set forth the elements of the reckless homicide offense; and, (3) the State's motion for a protective order was properly granted.

For the reasons given below, we affirm.

At about 9 p.m. on June 26, 1981, a motorcycle driven by defendant either struck or collided with eight-year-old Steve Sobieraj riding a bicycle near 8400 South Burley Avenue, resulting in the latter's death. The rear passenger on defendant's motorcycle, Anacleto Torres, stated that before the accident he told defendant not to "go fast." Defendant replied, "Don't worry about it." Defendant also told him that he was going to "catch up" to the driver of the first motorcycle. Defendant slowed down to swerve around a pickup truck and then accelerated to about 40 or 45 miles per hour in the middle of Burley Avenue when Torres heard a thump. Defendant did not cross the center line to travel in the west side of the street. Torres' head was turned and his eyes watery because of the wind. He did not see the center line or a child on a bicycle.

The victim's 13-year-old sister, Cindy Sobieraj, stated in effect that 10 to 12 children were playing in the area near the incident. Two motorcycles came, the second of which crossed the yellow line and hit the victim who was on the west side of Burley Avenue going toward 84th Street. The victim bounced up in the air, hit the ground and was dragged 140 feet. The testimony of Richard Sobieraj, age 16, substantially corroborated Cindy's testimony. He added that the victim was

hit from behind while riding his bicycle against traffic. The examining physician was of the opinion that the victim was struck from behind.

Anna Carrillo's testimony[1] was essentially in accord with that given by Cindy and Richard Sobieraj. Her testimony, however, was contradicted by her prior statements to investigating police officers.

Jesus Bustos, the driver of the first motorcycle, stated that whenever he looked in the rearview mirror, defendant was in the proper lane. He did not see the accident.

According to the investigating officer, 84th and Burley was a predominantly residential area. Although not posted, the speed limit was 30 miles per hour. Motorcycle fragments were found on the west side of the street. The first spot of blood appeared near 8401 Burley about the center of the street. It "stopped" on the west side of the street around 8358 Burley. He did not find any skid marks.

Defendant testified on his own behalf. He was driving between 35-40 miles per hour in the right-hand lane of Burley. Suddenly, a bicycle darted out from two parked cars. The right side of his motorcycle hit the front of the bicycle. A photograph identified as People's exhibit No. 15A revealed that the front wheel of the victim's bicycle was deformed. Defendant identified a series of photographs showing damage to the right side of his motorcycle. He went to a "disco" that evening. The next morning, however, he voluntarily turned himself in to the police. In rebuttal, Richard Sobieraj stated that no cars were parked on Burley Avenue between the house and the corner of the block.

## I

■ Defendant contends that the evidence failed to prove him guilty of reckless homicide beyond a reasonable doubt. He argues that the testimony of Cindy and Richard Sobieraj was biased because of their relationship to the victim. He asserts that the State's evidence was replete with conflicts in the testimony on vital questions of fact, particularly on the question of whether defendant was driving in the proper lane at the time of the accident. These contentions must be rejected. The circuit court properly could have found from the State's evidence that defendant failed to apply the brakes and that at the moment of impact was moving well in excess of the 30 miles per hour speed limit in the left-hand lane of a residential street where 10 to 12 children were playing. To reach this finding, the circuit court did not have to rely on the eyewitness testimony of Anna Carrillo which was

---

[1]Carrillo was called by defendant to testify as an adverse witness.

impeached by her prior inconsistent statements to the investigating police. The testimony of Cindy and Richard Sobieraj by itself, if believed, demonstrated that defendant was in the wrong lane at the time of impact. In the exercise of its discretion as fact-finder, the circuit court did not have to believe the contrary testimony of defendant, Bustos, and Torres, particularly since the latter two did not view the collision. The evidence was not so unsatisfactory or improbable as to raise a reasonable doubt of defendant's guilt. *People v. Ellis* (1978), 74 Ill. 2d 489, 496, 384 N.E.2d 331.

## II

Defendant assigns error to the order denying his post-trial motion in arrest of judgment, maintaining that the indictment is insufficient. The indictment charges that:

> "[H]e [defendant] \*\*\* unintentionally and without lawful justification, while driving a motor vehicle, to wit: a motorcycle, recklessly performed acts in such a manner as were likely to cause death or great bodily harm to some individual and such acts caused the death of Steven Sobieraj, in violation of Chapter 38, Section 9—3(a), of the Illinois Revised Statutes 1979 \*\*\*."

To withstand a motion in arrest of judgment, the indictment must comport with the requirements of section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 111—3(a)). (*People v. Simmons* (1982), 93 Ill. 2d 94, 99, 442 N.E.2d 891; *People v. Lutz* (1978), 73 Ill. 2d 204, 209-11, 383 N.E.2d 171.) Section 111—3 requires, among other things, that the charge set forth the nature and elements of the offenses charged. The elements of a reckless homicide are as follows (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a)):

> "A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly, except in cases in which the cause of the death consists of the driving of a motor vehicle, in which case the person commits reckless homicide."

Defendant argues that since the indictment alleges that the acts which caused the victim's death were done "unintentionally," it does not charge all of the essential elements of the crime of reckless homicide. He observes that the word "unintentionally" in the statute refers to the killing of an individual and not to the manner in which the alleged acts were performed. An act, he urges, cannot be both unin-

tentional and reckless, since the latter term is defined to mean a conscious disregard of a substantial risk. Ill. Rev. Stat. 1981, ch. 38, par. 4—6.

. Whether the requirements of section 111—3 have been met must be judged in light of the purpose of the charging instrument. (*People v. Bissaillon* (1977), 55 Ill. App. 3d 893, 894, 371 N.E.2d 362.) The function of a charging instrument is first to advise the accused of the nature of the accusation so he is able to fully prepare his defense, and second, to serve as a bar to a second prosecution for the same offense. (*People v. Simon* (1980), 91 Ill. App. 3d 667, 669, 416 N.E.2d 285.) Whether a charge is valid must be measured by the substance of the charge, and not the technicalities of its language. (*People v. Powell* (1978), 72 Ill. 2d 50, 64, 377 N.E.2d 803.) Where a statute is cited in the indictment, the statute and the charge must be construed together. (*People v. Phelan* (1981), 99 Ill. App. 3d 925, 930, 426 N.E.2d 925.) A charging instrument which contains a formal defect is not void. (*People v. Hert* (1981), 95 Ill. App. 3d 871, 873, 420 N.E.2d 813; *People v. Williams* (1980), 80 Ill. App. 3d 963, 967-69, 400 N.E.2d 532; *cf. People v. Smith* (1983), 112 Ill. App. 3d 1033, 446 N.E.2d 260.) In *Hert,* the omission of the words "not being a peace officer acting in the line of duty" from a home invasion charge did not render the indictment invalid. The court in *Williams* found a murder information sufficient which omitted the words "without lawful justification."

■ One word in the present indictment, "unintentionally," was misplaced. When read as a whole and in light of its purpose, the indictment adequately advised defendant of the nature and elements of the reckless homicide offense. In this context, the misplacement of "unintentionally" was merely a technical defect which did not void the indictment.

### III

Prior to trial, in a written motion, the State alleged that there "exist[ed] a related civil matter arising out of the same occurrence." In preparing for the civil litigation, defendant allegedly deposed persons who were listed as potential State witnesses and issued subpoenas for others. The State moved, in effect, for a protective order barring use of these depositions at defendant's criminal trial. The circuit court orally granted the motion, finding that employment of the depositions would place the prosecution "at a disadvantage." It observed that under the applicable criminal Supreme Court Rules, the depositions would have been unavailable to the defense here.

Defendant argues that the circuit court was without authority to enter this order. The State disagrees, contending that Supreme Court Rule 415(d) (87 Ill. 2d R. 415(d)) allowed the court to grant the order on a showing of cause. No Illinois authority is cited or found relating to this issue. Rule 415(d) provides:

> "Upon a showing of cause, the court may at any time order that specified disclosures be restricted or deferred, or make such other order as is appropriate provided that all material and information to which a party is entitled must be disclosed in time to permit counsel to make beneficial use thereof." 87 Ill. 2d R. 415(d).

This rule is designed to regulate the discovery or disclosure process in *criminal* cases (see Ill. Ann. Stat., ch. 110A, par. 415, Historical & Practice Notes, at 709 (Smith-Hurd 1976)), rather than whether information already recorded through the deposition process in a related civil controversy may be employed by a defendant for his own benefit at criminal trial. Ordinarily, motions for protective orders under similar circumstances would be made by a defendant who fears that disclosure in the civil case may develop evidence that will prove harmful to his criminal defense or will aid in the State's prosecution. (See *D'Ippolito v. American Oil Co.* (S.D.N.Y. 1967), 272 F. Supp. 310.) In the case *sub judice,* however, it is defendant who wished to use the material, and the testimony he sought to use was contained in depositions already taken. Because defendant failed to protect the record in regard to this issue, however, as shown by the following discussion, the circuit court's ruling under Rule 415(d) need not be reached on review.

Defendant made no offer of proof as to either the substance of the civil depositions or the persons actually deposed (*People v. Limas* (1977), 45 Ill. App. 3d 643, 649, 359 N.E.2d 1194) and failed to include them in the appellate record. We cannot speculate as to the content of the depositions or to the alleged prejudicial effect stemming from the order forbidding their use. (*People v. Nowak* (1979), 76 Ill. App. 3d 472, 477-78, 395 N.E.2d 28; *People v. Slaughter* (1977), 55 Ill. App. 3d 973, 371 N.E.2d 666.) Accordingly, this error, if any, does not constitute a basis for reversal.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.